# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF INDIANA

| | |
|---|---|
| JACQUELINE A. PINDER, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | CAUSE NO.: 3:09-CV-363-TS |
| ) | |
| MICHAEL J. ASTRUE, ) | |
| COMMISSIONER OF SOCIAL ) | |
| SECURITY ADMINISTRATION, ) | |
| ) | |
| Defendant. ) | |

## OPINION AND ORDER

The Plaintiff, Jacqueline A. Pinder, brought this action pursuant to 42 U.S.C. §§ 405(g) & 1383(c)(3) asking this Court to review a decision of the Commissioner of the Social Security Administration denying her application for Social Security disability benefits. The Plaintiff claims that the findings of the administrative law judge (ALJ) relating to the Plaintiff's residual functional capacity (RFC) are not supported by substantial evidence because the ALJ did not provide an adequate explanation for disregarding the witness testimony that was presented concerning her impairments, and did not provide good reason for discrediting the opinions of the Plaintiff's treating sources or otherwise provide adequate rationale to support the RFC.

On August 21, 2009, this Court referred the matter to Magistrate Judge Christopher A. Nuechterlein for a report and recommendation. On December 9, 2009, the Plaintiff filed her Opening Brief [DE 14] and on December 9, the Defendant filed his Memorandum in Support of the Commissioner's Decision [DE 19]. On April 21, 2010, Magistrate Judge Nuechterlein filed a Report and Recommendation [DE 20] recommending that the matter be remanded to the ALJ to "proffer a more thorough credibility determination," discuss the testimony of lay witnesses, provide "a more thorough discussion of the medical evidence to ensure that the ALJ's [residual

functioning capacity] RFC finding is adequately supported," and "reevaluate his proposed hypothetical, in light of his new credibility and RFC findings."

On April 29, the Defendant filed his Objections to the Magistrate Judge's Report and Recommendation [DE 21]. The Defendant maintains that the Magistrate Judge did not give proper deference to the ALJ's credibility determination, that remand is not required for the ALJ's failure to discuss lay witness testimony because the ALJ discussed the subject matter of their testimony during his discussion of the medical evidence, that the Magistrate Judge's decision improperly focuses on the ALJ's RFC findings as opposed to those found by the Appeals Council, and that the Appeals Council was entitled to rely on the vocational expert's testimony in response to an RFC that was supported by substantial evidence. Because the Defendant has objected to the Magistrate Judge's Report and Recommendation, this Court must "make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made." 28 U.S.C. § 636(b)(1).

**BACKGROUND**

The Plaintiff filed applications for Supplemental Security Income and Disability Insurance Benefits alleging that she had become disabled on August 1, 2002. Her applications were denied, and on June 13, 2007, she appeared with counsel and testified at a hearing before an ALJ. Five additional witnesses testified on behalf of the Plaintiff: Rich Stokes; Michelle Jenkins; Rhonda Vanderwall; Nancy Ewing; and Sally Crum. A vocational expert also testified.

On August 31, 2007, the ALJ issued a decision in which he found that the Plaintiff was not disabled under the Social Security Act because she was able to perform a significant number

of jobs in the national economy. Applying the familiar five-step analysis used to evaluate disability claims, 20 C.F.R. § § 404.1520 & 416.920, the ALJ found that the Plaintiff had not worked since the alleged onset date of her disability (step one); she had severe impairments, including numbness of the left arm, memory loss, and headaches (step two); her impairments did not meet or equal a listed impairment (step three); she had RFC to perform the full range of light work and limited medium work and was unable to perform her past relevant work (step four); and the full range of light work RFC supported a finding of "not disabled" under Medical-Vocation rule 202.20 (step five).

The Plaintiff requested review of the ALJ's decision and the Appeal Council granted the Plaintiff's request. On June 9, 2009, the Appeals Council issued its own decision largely adopting the ALJ's decision, but issuing its own findings with relation to the Plaintiff's RFC:

> The Appeals Council adopts the Administrative Law Judge's statements regarding the pertinent provisions of the Social Security Act, Social Security Administrative Regulations, Social Security Rulings and Acquiescence Rulings, this issues in the case, and the evidentiary facts, as applicable. The Appeals Council also adopts the Administrative Law Judge's findings and conclusions regarding whether the claimant is disabled, the credibility of her subjective complaints, and the "B" criteria rating used to assess the severity of mental impairments (20 CFR 404.152-a and 416.920a). The Appeals council does not adopt the Administrative Law Judge's findings or conclusions concerning the claimant's residual functional capacity.

(R. 9–10.) The Appeals Council agreed with the ALJ's findings under steps 1, 2, 3 and 4 of the sequential evaluation, namely that the Plaintiff had not engaged in substantial gainful activity since August 1, 2002, had severe impairments that did not meet or equal in severity a listed impairment, and that she was not capable of performing past relevant work. However, the Appeals Council did not agree with the ALJ's finding that the Plaintiff had the RFC to perform the full range of light work and a limited range of medium work, and thus did not agree that the

Medical-Vocational Rule 202.20 could be used to direct a finding of "not disabled." The Appeals Council instead adopted the RFC from the second hypothetical that the ALJ had posed to the vocational expert, which described an individual limited to work at the light level of exertion, and further restricted by a limitation to unskilled work and a need to avoid working around extreme temperatures, noise, vibrations, unprotected heights, and hazardous machinery. Under this RFC, the Plaintiff would also have to avoid work that involved production pace, but would be able to perform goal oriented work and to be around employees. She could have occasional, brief conversations with employees and the public. The vocational expert testified that there were more than five hundred jobs in the regional economy that an individual with this RFC could perform, including equipment cleaner, parking lot attendant, laundry folder, and mail clerk. Accordingly, the Appeals Council found that the Plaintiff was not disabled within the framework of Medical-Vocational Rule 202.20, Table No. 2 of 20 CFR Part 404, Subpart P, Appendix 2. (R. 10–11.) The Appeals Council's decision has become the final decision of the Commissioner. 20 C.F.R. §§ 404.981, 416.1481.

**DISCUSSION**

A reviewing court will affirm the denial of disability benefits so long as the ALJ's decision is supported by substantial evidence, meaning evidence "sufficient for a reasonable person to accept as adequate to support the decision," and the court will not reweigh evidence or substitute its judgment for that of the ALJ. *Ketelboeter v. Astrue*, 550 F.3d 620, 624 (7th Cir. 2008) (internal citation omitted). The ALJ must build a "logical bridge" between the evidence and his conclusions. *Rice v. Barnhart*, 384 F.3d 363, 369 (7th Cir. 2004) (internal citation

4

omitted). Even if "reasonable minds could differ" about whether a claimant is disabled, the court will affirm the ALJ's denial of benefits so long as the decision has adequate support. *Elder v. Astrue*, 529 F.3d 408, 413 (7th Cir. 2008). Here, the findings being challenged are those related to the ALJ determination of the Plaintiff's RFC, which is the work the Plaintiff could still do despite her physical and mental impairments. 20 C.F.R. § 404.1454(a).

### A. Residual Functional Capacity

The Plaintiff argues that the ALJ's RFC assessment is conclusory and does not contain any rationale or reference to the supporting evidence, as required by SSR 96-8p. She also contends that, in determining her RFC, the ALJ improperly discredited her statements about her limitations, ignored the testimony of other lay witnesses regarding her limitations, and failed to give good reason for not crediting opinions from the Plaintiff's treating sources.

The RFC at issue is described in the findings of the Appeals Council:

> The claimant's impairment results in the following limitations on her ability to perform work-related activities: lifting and carrying 20 pounds occasionally and 10 pounds frequently, standing and/or walking 6 hours in an 8 hour work day. She would also have to avoid work around temperature extremes, vibration, unprotected heights, and hazardous machinery. She would have to avoid work that involves production pace. She would be able to perform goal oriented work and she can be around employees, and have brief conversations with employees and the public.

(R. 11.) This RFC includes both exertional and nonexertional limitations, and indicates that the Plaintiff could not perform the full range of work at the light exertional level.

#### 1. *Adverse Credibility Finding*

The Plaintiff claims that the ALJ's credibility determination is flawed because he failed

5

to reference the testimony of lay witnesses Rich Stokes, Michelle Jenkins, Rhonda Vanderwall, Nancy Ewing, and Sally Crumb, and thus there is no indication of the weight or consideration he gave to their testimony. The Plaintiff also asserts that the ALJ improperly determined that her activities of daily living were evidence of substantial gainful activity, and did not explain how the Plaintiff's ability to engage in these limited and sporadic activities and household tasks convinced him that she was able to perform daily work activities for longer than she professed that she could.[1]

In assessing the credibility of the Plaintiff's statements, the ALJ identified the following as factors he would consider: the plaintiff's daily activities; the location, duration, frequency, and intensity of her pain and other symptoms; factors that precipitate and aggravate the symptoms; the type, dosage, effectiveness, and side effects of any medication the plaintiff takes or has taken to alleviate pain or other symptoms; treatment, other than medical, that the plaintiff receives or has received for relief of pain or other symptoms; any measures other than treatment the plaintiff uses or has sued to relieve pain or other symptoms; and any other factors concerning the plaintiff's functional limitations and restrictions due to pain or other symptoms. (R. 27) (citing SSR 96-7p; 20 C.F.R. §§ 404.1592(c) & 416.929(c)). The ALJ began his analysis by stating that the Plaintiff claimed she was unable to perform even basic daily activities because of memory loss and numbness in her upper extremities, and that her headaches made it difficult to perform any type of activities. (R. 28.) The ALJ concluded that, "[a]fter considering the

---

[1] The Plaintiff does not identify the limitations on her daily work activities that she contends should have been recognized. A review of the transcript of her testimony before the ALJ reveals that the Plaintiff testified that she could stand for 45 minutes before getting tired, sit for "probably about like an hour, half an hour, even 45 minutes" before her back would start to hurt, and walk one-half mile before becoming light-headed.

evidence of record," the Plaintiff's "medically determinable impairments could reasonably be expected to produce the alleged symptoms, but that the [Plaintiff's] statements concerning the intensity, persistence, and limiting effects of these symptoms was not entirely credible," (R. 28) and then cited various medical reports that discussed the Plaintiff's medically determinable impairments and related symptoms. Once report concerning headaches indicated that they were tension headaches, which were lessened with medications. Another report addressing the Plaintiff's complaints of forgetfulness and headaches noted that the plaintiff's speech during her exam was fluent and she did not demonstrate any memory deficits. This same report indicated that the Plaintiff could use both hands to pick up coins and button clothing and that her grip strength was subjectively assessed as normal. One report noted difficulties with multitasking, but suggested that there were strategies and compensations for dealing with such difficulties that would alleviate some of her deficits. The ALJ stated that he also gave some weight to the RFC conclusions reached by physicians employed by the State Disability Determination Services, which support a finding of "not disabled." The ALJ then noted that the Plaintiff cared for a small child most of the day, and that she did her own laundry, cooking, and grocery shopping. The ALJ stated that another factor influencing his conclusion was the Plaintiff's "generally unpersuasive appearance and demeanor while testifying at the hearing." (R. 7.) The ALJ emphasized that this observation was "only one among many being relied on in reaching a conclusion regarding the credibility" of the Plaintiff's allegations and her RFC. (*Id.*)

An ALJ is in the best position to determine the credibility of witnesses, and a credibility determination will be overturned only if it is patently wrong. *Craft v. Astrue*, 539 F.3d 668, 678 (7th Cir. 2008). "Reviewing courts therefore should rarely disturb an ALJ's credibility

7

determination, unless that finding is unreasonable or unsupported." *Getch v. Astrue*, 539 F.3d 473, 483 (7th Cir. 2008). However, the court may reverse when the ALJ fails to comply with SSR 96-7p, including the Ruling's explanation requirement. *See, e.g., Brindisi v. Barnhart*, 315 F.3d 783, 787–88 (7th Cir. 2003). The determination of credibility must be supported by the evidence and must be specific enough to enable the claimant and a reviewing body to understand the reasoning. *Craft*, 539 F.3d at 678. To evaluate credibility, an ALJ must "consider the entire case record and give specific reasons for the weight given to the individual's statements." SSR 96-7p. The ALJ should look to a number of factors to determine credibility, such as the objective medical evidence, the claimant's daily activities, allegations of pain, aggravating factors, types of treatment received and medication taken, and "functional limitations." *Simila v. Astrue*, 573 F.3d 503, 517 (7th Cir. 2009) (citing 20 C.F.R. § 404.1529(c)(2)–(4) and *Prochaska v. Barnhart*, 454 F.3d 731, 738 (7th Cir. 2006)).

Here, the ALJ considered the Plaintiff's statement about the limiting effects of her impairments, and then summarized medical reports and the Plaintiff's testimony about her daily activities. Although objective medical evidence and daily activities are appropriate factors to consider, the ALJ failed to articulate how these factors supported or contradicted any particular claims made by the Plaintiff. Regarding the Plaintiff's headaches, the ALJ wrote that the Plaintiff stated that they made it "difficult to perform any type of activities." (R. 28.) First, this characterization of the Plaintiff's testimony regarding her headaches—that they made it "difficult to perform any type of activity"—is not supported by the record, which reveals that the Plaintiff testified that her headaches, which she suffered from two to three days a week, interfered with her concentration. She stated that when she got a headache, she could not lay

down and relax until it went away because she has a five-year-old son. She takes medicine on a regular basis which sometimes reduces the frequency and/or duration of the headaches. (R. 530–31.) Thus, it is not clear whether there is an actual contradiction between the cited medical evidence, which simply noted the existence of tension headaches and the use of medication to treat them, and the Plaintiff's testimony about her headaches. In any event, the ALJ does not explain how any of the medical reports that he cited convinced him that the Plaintiff's testimony about her headaches was not credible. He does not highlight any inconsistency between the Plaintiff's statements and the medical evidence, or otherwise articulate the reason behind his determination that her "statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely credible." (R. 28.)

The ALJ also states in his decision that the Plaintiff argued that she is "unable to perform even basic daily activities because of memory loss and the numbness she has in her upper extremities." (R. 28.) This Court could find no such statement by the Plaintiff in her testimony. (R. 530–36.) The Plaintiff's testimony was that the numbness in her left arm caused her to drop things and that she had a hard time bathing the right side of her body because it was hard to reach certain places with her left arm. She stated that she could get dressed but it took a little longer because her left side is not cooperative. She testified that the memory loss caused her to repeat things to people and that she "can't find my words you know, when I'm trying to talk." (R. 532–33.) Again, the ALJ cited to medical reports, but did not explain how these reports supported or refuted the Plaintiff's statements regarding the impact of her memory loss or numbness.

The ALJ also noted that the "evidence in file demonstrates" that the Plaintiff cared for a

small child and did her own laundry, cooking, and grocery shopping. It is proper for an ALJ to consider a claimant's daily activities as a factor when assessing the credibility of a claimant's complaints. 20 C.F.R. §§ 404.1529(c) & 416.929(c); SSR 96-7p. Although the ALJ does not outright say so, it appears that he considered this evidence to be in contradiction to the limiting impact of her headaches, memory loss, and numbness. But as already explained, the statements the ALJ attributes to the Plaintiff are not supported by the record, and thus any contradiction appears illusory. The Plaintiff herself admitted to performing these activities during the discussion of her limitations, which makes the ALJ's statement about her "generally unpersuasive appearance and demeanor while testifying at the hearing," difficult to follow. Certainly, the Plaintiff's tasks could be considered, and they may have rendered her testimony about the limiting impact of certain symptoms less credible, but the ALJ does not explain how these daily household tasks were inconsistent with other limitations the Plaintiff claimed to have. Reciting facts that align with a particular factor that the ALJ may consider is not the same as giving specific reasons for the weight given to the individual's statements in light of those factors, and this case must be remanded for the ALJ to articulate his findings.

The Plaintiff argues that the ALJ failed to consider the testimony of witnesses who described the Plaintiff's panic attacks, memory loss, lack of coordination, and headaches. The Defendant contends that it was not necessary for the ALJ to specifically address their testimony because he discussed the issues raised by those witnesses when he addressed the medical evidence. Although some of the issues raised by these witnesses were discussed in the medical records cited by the ALJ, his decision is void of any mention of the lack of coordination that caused the Plaintiff to fall, or her panic attacks, both of which the Plaintiff also testified about.

According to SSR 96-7p, a strong indication of credibility of a claimant's statement is their consistency with other information in the case, including "observations by other persons concerning the individual's daily activities, behavior, and efforts to work." The ALJ does not address the lay witness testimony, and thus does not minimally articulate whether their statements tended to support or to contradict the Plaintiff's testimony.

The ALJ's explanation was not sufficiently detailed to allow the court to follow the ALJ's reasoning, and the Defendant's objection to the Magistrate Judge's Report and Recommendation with regard to the credibility determination is overruled.

### 2. *Medical Evidence*

Although the "RFC assessment is a function-by-function assessment," SSR 96-8p, the expression of a claimant's RFC need not be articulated function-by-function; a narrative discussion of a claimant's symptoms and medical source opinions is sufficient. In the narrative, the ALJ must describe "how the evidence supports each conclusion, citing specific medical facts (e.g., laboratory findings) and nonmedical evidence (e.g., daily activities, observations)." SSR 96-8p. The ALJ must also discuss the individual's ability to perform sustained work activities in an ordinary work setting on a regular and continuing basis, and describe the maximum amount of each work-related activity the individual can perform based on the available evidence. The ALJ must explain how any material inconsistencies or ambiguities in the evidence were considered and resolved. "The RFC assessment must always consider and address medical source opinions. If the RFC assessment conflicts with an opinion from a medical source, the [ALJ] must explain why the opinion was not adopted." SSR 96-8p.

This Court cannot determine, based on the ALJ's decision, whether the ALJ's RFC assessment was based on substantial evidence. The ALJ did not link his findings to the evidence in the record, such that this Court can assess the agency's ultimate findings and afford the Plaintiff meaningful judicial review. The Defendant argues that the Appeal's Council's RFC findings falls well within the opinions of the state agency doctors who assessed the Plaintiff's limitations, and that the Plaintiff does not point to any medical evidence that is inconsistent with this finding. The Defendant is correct: the Plaintiff does not explain how the RFC is contrary to medical evidence from her treating physicians, and does not identify any opinion that the ALJ should have given controlling weight, but failed to. However, neither does the ALJ specifically indicate the weight that he gave to any particular opinion, explain which treatment notes support which limitations, or otherwise describe how he arrived at the RFC. The ALJ did not describe how the medical facts and nonmedical evidence impacted any particular limitation. If the Plaintiff failed to meet her burden to provide sufficient medical evidence of her impairments and limitations, it was for the ALJ to make this adverse finding and minimally articulate how he arrived at the conclusion through the framework of SSR 96-8p. The Defendant's objection to the Magistrate Judge's Report and Recommendation is denied.

B.     **Hypothetical Posed to the Vocational Expert**

The Magistrate Judge found that because the court had already "determined that remand is necessary for the ALJ to reconsider his credibility finding, discuss the weight afforded the testimony of Pinder's friends and relatives, and more thoroughly discuss the evidence supporting his RFC finding, it is also necessary that the ALJ reevaluate his proposed hypothetical in light of

12

his new credibility and RFC findings." (Report and Recommendation 12–13, DE 20.) Because the Defendant's objection to the Magistrate Judge's findings on this issue necessarily depends on the Court sustaining his objections to these other findings, the objection is overruled and the recommendation of the Magistrate Judge is adopted.

## CONCLUSION

For the foregoing reasons, the Defendant's Objections to the Magistrate Judge's Report and Recommendation [DE 21] are OVERRULED. The Report and Recommendation [DE 20] is ADOPTED and INCORPORATED in this Opinion and Order. Accordingly, this matter is REMANDED to the Commissioner for proceedings consistent with this Opinion and Order, including the incorporated Report and Recommendation.

SO ORDERED on June 1, 2010.

    s/ Theresa L. Springmann
THERESA L. SPRINGMANN
UNITED STATES DISTRICT COURT
FORT WAYNE DIVISION